1

2

3

4

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

5

\* \* \*

6

7

8

9

10

11

12

13

14

BRUCE BUTCHER,

          Plaintiff,

v.

ADVANCED MINERAL
TECHNOLOGIES, INC.; H. PHILIP
CASH; GARY MASON; CLETIUS
ROGERS; AND BIL ZELENY,

          Defendants.

AND RELATED COUNTERCLAIMS.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

2:10-CV-01802-PMP-LRL




ORDER

15      Presently before the Court is Plaintiff's Motion to Dismiss Counterclaim Filed by

16  Defendant H. Philip Cash (Doc. #13), filed on December 9, 2010.  Defendants H. Philip

17  Cash, Gary Mason, Cletius Rogers, and Bil Zeleny filed an Opposition (Doc. #20) on

18  December 27, 2010.  Plaintiff filed a Reply (Doc. #23) on January 6, 2011.

19      Also before the Court is Plaintiff's Motion to Dismiss Counterclaim Filed by

20  Defendant Advanced Mineral Technologies, Inc. (Doc. #18).  No opposition was filed.

21  **I.  BACKGROUND**

22      This is a derivative stockholder suit initiated by Plaintiff Dr. Bruce Butcher

23  ("Butcher"), a stockholder of nominal Defendant Advanced Mineral Technologies, Inc.

24  ("AMT").  (Compl. (Doc. #1).)  AMT is a Nevada corporation with headquarters in Idaho.

25  (Id. at 3.)  AMT primarily is engaged in exploration activities at a mine site in Canada.  (Id.

26  at 4.)  Defendant H. Philip Cash ("Cash") is AMT's Chief Executive Officer and President.

1   (Id. at 3.)  Defendant Bil Zeleny is AMT's Chief Financial Officer.  (Id.)  Defendant Cletius

2   Rogers is AMT's Vice President and Secretary.  (Id.)  Defendants Cash, Rogers, and Gary

3   Mason comprise AMT's current Board of Directors.  (Id. at 3-4.)

4          Generally, Butcher's derivative action alleges that Defendants made

5   misrepresentations and took unauthorized corporate actions to entrench themselves as

6   AMT's board and to enrich Cash and Zeleny.  Butcher asserts securities fraud claims

7   against Defendants based on their alleged scheme to defraud AMT and its innocent

8   stockholders.  Defendant Cash counterclaims against Butcher, alleging Butcher fraudulently

9   induced Cash to transfer millions of AMT shares to Butcher.

10         According to the Counterclaim, Cash met with Butcher in July 2007.  (Ans. &

11  Countercl. (Doc. #10) at 4.)  Butcher presented himself as someone who could raise funds

12  through his contacts in the oil and mining industries.  (Id.)  Butcher and Cash discussed two

13  projects for which Cash was seeking investments, the Platinum Creek Mine in Alaska, and

14  the Tillicum Mine in Canada.  (Id.)  Based on Butcher's ability to raise funds and Cash's

15  operational knowledge, the two decided to become partners in the Platinum Creek Mine

16  venture.  (Id.)

17         AMT, meanwhile, had not filed its annual report with the Securities Exchange

18  Commission ("SEC") for 2007.  (Id.)  According to the Counterclaim, in November 2007,

19  Cash and Butcher orally agreed that Butcher would pay the costs associated with bringing

20  AMT into compliance with the SEC, in exchange for which Cash would transfer to Butcher

21  35 million shares of AMT common stock which Cash owned.  (Id.)

22         On July 14, 2008, Cash wrote a letter to Butcher confirming their oral agreement

23  that Butcher would receive 35 million AMT shares in exchange for funding the efforts to

24  get AMT into compliance.  (Id. at 4-5.)  Cash also confirmed that per their oral agreement,

25  Butcher was to receive an additional 22,750,000 shares of AMT stock from Cash, which,

26  according to the Counterclaim, Butcher represented he would use to raise $22 to $25

1   million for AMT at one dollar per share.  (Id. at 5.)  According to the Counterclaim, at the

2   time Butcher represented he would raise these funds, he had no intention of doing so.  (Id.)

3           In June 2009, Cash was approached to meet with a potential investor in San

4   Francisco.  (Id.)  Butcher thereafter contacted Cash and told him that Butcher had set up a

5   meeting with a potential investor in Las Vegas, but that Butcher could not attend the

6   meeting.  (Id.)  Butcher asked Cash to attend in his stead.  (Id.)  When Cash arrived in Las

7   Vegas, no investor was present.  (Id.)  Instead, Butcher met with Cash, told Cash he was

8   aware of the meeting with the potential investor in San Francisco, and that Cash should not

9   attend the meeting in San Francisco.  (Id.)  Cash followed Butcher's recommendation.  (Id.)

10          While in Las Vegas, Butcher advised Cash that Butcher had an investor for AMT

11  whose funding of the project was imminent.  (Id.)  Butcher told Cash that to complete the

12  deal, Cash would need to transfer the additional 22,750,000 shares to Butcher.  (Id.)  Cash

13  and Butcher traveled to the company that handled stock transfers for AMT, and on June 17,

14  2009, Cash transferred the shares to Butcher.  (Id.)

15          According to the Counterclaim, Butcher thereafter kept all the shares without

16  paying the funds necessary to bring AMT into compliance with the SEC and without raising

17  funds to make AMT's mine operational.  (Id. at 6.)  Cash alleges Butcher never intended to

18  raise money to make AMT's mine operational, and instead fraudulently misrepresented his

19  intentions to obtain the shares from Cash.  (Id.)  Cash thus brings counterclaims for fraud,

20  negligent misrepresentation, constructive fraud, breach of contract and the covenant of good

21  faith and fair dealing, and securities fraud.

22          Butcher now moves to dismiss the counterclaims.  Butcher requests the Court

23  consider certain exhibits at the dismissal stage which Butcher contends contradict Cash's

24  allegations.  Butcher argues that upon reviewing these materials, dismissal is appropriate

25  because Cash did not justifiably rely on any alleged misrepresentations by Butcher, several

26  of the statements attributable to Butcher are not actionable, no special relationship exists to

3

1   support a constructive fraud claim, and the terms of the contract upon which Cash relies

2   contradict his allegations in the Counterclaims.  Cash opposes, arguing that the Court

3   should not consider the exhibits Butcher attaches to his motion at the dismissal stage.  Cash

4   contends he adequately has alleged facts supporting each element, and the Court should not

5   delve into competing views over what the exhibits mean at the dismissal stage.

6   **II.  DISCUSSION**

7           In considering a motion to dismiss, "all well-pleaded allegations of material fact

8   are taken as true and construed in a light most favorable to the non-moving party."  Wyler

9   Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998) (citation

10   omitted).  However, the Court does not necessarily assume the truth of legal conclusions

11   merely because they are cast in the form of factual allegations in the plaintiff's complaint.

12   See Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994).  There is a

13   strong presumption against dismissing an action for failure to state a claim.  Ileto v. Glock

14   Inc., 349 F.3d 1191, 1200 (9th Cir. 2003).  A plaintiff must make sufficient factual

15   allegations to establish a plausible entitlement to relief.   Bell Atl. Corp. v Twombly, 550

16   U.S. 544, 556 (2007).  Such allegations must amount to "more than labels and conclusions,

17   [or] a formulaic recitation of the elements of a cause of action."  Id. at 555.

18           **A.  Exhibits**

19           Butcher attaches to his motion to dismiss a sworn declaration by Cash which was

20   filed in a Nevada state court action, a letter dated July 14, 2008 from Cash to Butcher, and

21   three documents AMT filed with the SEC.  Butcher requests the Court consider these

22   exhibits at the motion to dismiss stage as incorporated by reference in the Counterclaims or

23   subject to judicial notice.

24           Cash objects to the Court considering these documents at the dismissal stage.

25   Cash objects to the consideration of the July 14 letter because it is unauthenticated,

26   incomplete, and not incorporated by reference in the Counterclaim.  Cash objects to the

4

1  Court considering the Cash declaration because doing so would require interpreting the

2  statements therein, which is inappropriate at the motion to dismiss stage.  Cash disputes

3  Butcher's interpretation of the SEC documents' meaning, which he argues counsels against

4  the Court considering them at this point in the proceedings.

5        If the Court considers evidence outside of the pleadings when examining a

6  motion to dismiss for failure to state a claim, the Court generally must convert the motion

7  into a motion for summary judgment and give the nonmoving party an opportunity to

8  respond.  United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003).  However, the Court

9  may "consider certain materials-documents attached to the complaint, documents

10  incorporated by reference in the complaint, or matters of judicial notice-without converting

11  the motion to dismiss into a motion for summary judgment."  Id. at 908.  Additionally, the

12  Court may consider extrinsic documents, including contracts, when "the plaintiff's claim

13  depends on the contents of a document, the defendant attaches the document to its motion to

14  dismiss, and the parties do not dispute the authenticity of the document, even though the

15  plaintiff does not explicitly allege the contents of that document in the complaint."  Knievel

16  v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).

17        The Court may take notice of matters of public record without converting a

18  motion to dismiss into one for summary judgment so long as the facts noticed are not

19  "subject to reasonable dispute."  Intri-Plex Tech., Inc. v. Crest Group, Inc., 499 F.3d 1048,

20  1052 (9th Cir. 2007) (quotation omitted).  Under Federal Rule of Evidence 201, judicially

21  noticeable facts not subject to reasonable dispute are facts that are either "(1) generally

22  known within the territorial jurisdiction of the trial court or (2) capable of accurate and

23  ready determination by resort to sources whose accuracy cannot reasonably be questioned."

24  When a court takes judicial notice of a matter of public record, it may judicially notice the

25  document's contents, but may not take judicial notice of "'the truth of the facts recited

26  therein.'"  Lee v. City of Los Angeles, 250 F.3d 668, 690 (9th Cir. 2001) (quoting S. Cross

1  <u>Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.</u>, 181 F.3d 410, 426-27 (3d

2  Cir. 1999)).

3         The Court takes judicial notice of the fact that Cash made certain statements

4  under oath in his declaration filed in the Nevada state court action, but the Court will not

5  take judicial notice of the truth of the facts stated therein, as Cash's statements do not

6  constitute facts not subject to reasonable dispute.  The Court also will take judicial notice of

7  the fact of the SEC filings, but will not take judicial notice of the truth of the facts stated

8  therein, as AMT's statements do not constitute facts not subject to reasonable dispute.

9         The Court will not consider the July 14 letter at the motion to dismiss stage.  The

10  letter is not appended to the Counterclaim, incorporated by reference therein, or subject to

11  judicial notice.  Additionally, while the letter might constitute a document upon which

12  Cash's claims depend, Cash disputed the authenticity and completeness of the exhibit

13  attached to Butcher's motion.  Butcher attempted to authenticate the letter through his

14  attorney's affidavit, but that affidavit gives no basis to conclude that Butcher's attorney has

15  personal knowledge that the July 14 letter is what it purports to be.  Moreover, the exhibit is

16  incomplete, as the letter references enclosures which Butcher has not included.  The Court

17  therefore will not consider this exhibit in ruling on Butcher's motion to dismiss.

18         **B.  Fraud/Negligent Misrepresentation**

19         Butcher argues many of the statements which Cash attributes to him are not

20  actionable because they are mere puffery or predictions of future performance.

21  Additionally, Butcher contends Cash's claim that Butcher promised to obtain funds for

22  AMT is contrary to the parties' written agreement, set forth in the July 14 letter, that

23  Butcher would obtain funds for another company, XS Platinum Ltd. ("XS"), not AMT.

24  Butcher also argues that Cash did not justifiably rely on any representations by Butcher

25  because Cash stated in his affidavit submitted in another court action that by the time he

26  transferred his shares to Butcher he doubted Butcher's representations that Butcher could or

6

1   would obtain the promised funding.

2          Cash responds that his declaration from the state court case sets forth facts

3   supporting justifiable reliance based on Butcher's assurance that he had secured an investor

4   whose investment was imminent, but could not be completed until Cash transferred the

5   shares to Butcher.  Cash also argues whether he justifiably relied is a jury question not

6   suitable for resolution at dismissal.  Cash further contends the Court should not consider the

7   July 14 letter, but even if it does, his counterclaim is consistent with the letter.  As to

8   whether Butcher's statements are actionable, Cash argues that Butcher received millions of

9   AMT shares by falsely representing he would use those shares to obtain investors with

10  money to bring the mine into operation.

11         Under Nevada law, a plaintiff asserting a fraud claim must prove by clear and

12  convincing evidence that (1) the defendant made a false representation (2) knowing or

13  believing that the representation was false (or lacking a sufficient basis for making the

14  representation), (3) intending to induce the plaintiff to act or to refrain from acting in

15  reliance on the misrepresentation; (4) the plaintiff justifiably relied on the

16  misrepresentation; and (5) damage to the plaintiff resulted from such reliance.  Albert H.

17  Wohlers & Co. v. Bartgis, 969 P.2d 949, 957-58 (Nev. 1998).  As for negligent

18  misrepresentation, Nevada follows the definition in Restatement (Second) of Torts § 552:

19         One who, in the course of his business, profession or employment, or
           in any other action in which he has a pecuniary interest, supplies false
20         information for the guidance of others in their business transactions, is
           subject to liability for pecuniary loss caused to them by their justifiable
21         reliance upon the information, if he fails to exercise reasonable care or
           competence in obtaining or communicating the information.
22

23  Scaffidi v. United Nissan, 425 F. Supp. 2d 1159, 1169-70 (D. Nev. 2005); Barmettler v.

24  Reno Air, Inc., 956 P.2d 1382, 1387 (Nev. 1998).  Whether the plaintiff has established the

25  elements for intentional or negligent misrepresentation is "ordinarily a question of fact."

26  Epperson v. Roloff, 719 P.2d 799, 802 (Nev. 1986).

7

1    In his declaration in the Nevada state court action, Cash stated that despite

2 Butcher's promises, "no large funding ever seemed to come through," and that in 2008, he

3 "began to reach a crisis point regarding the Tillicum property . . . ."  (Aff. of Jeffrey S.

4 Rugg (Doc. #14), Ex. A at ¶¶ 8-9.)  Cash averred that in July 2008, Butcher sent him an

5 agreement Butcher had drafted, which Cash signed even though he stated that "[a]t this

6 point I was beginning to suspect that Mr. Butcher was not what he was purporting to be,

7 due to his inability to raise additional funds for the Platinum, Alaska project, the fact that I

8 was still neither on the board of directors for XS, nor was I the president of that company."

9 (Id. at ¶ 11.)  However, Cash states he "was desperate and Mr. Butcher knew that [he] was

10 desperate."  (Id.)  Cash also states that over the next six months, "it became more and more

11 apparent that Mr. Butcher was not able to raise funds.  He reneged on several contracts

12 through XS, even though he had illegally funded both his and Mr. Balfour's retirement

13 funds."  (Id. ¶ 12.)  Cash also averred that Zeleny was informing Cash that he was having

14 difficulty bringing AMT into compliance due to Butcher's "reluctance in providing the

15 funds necessary to make this happen."  (Id. at ¶ 13.)  Cash stated he was becoming "more

16 and more uneasy with Mr. Butcher."  (Id. at ¶ 14.)

17    According to Cash's declaration, Butcher "would occasionally announce the

18 imminent funding of XS, and he would also continually reinforce the idea that he was trying

19 to fund AMT at the same time."  (Id. at ¶ 16.)  When Cash met Butcher in Las Vegas in

20 June 2009, he was "leery" of transferring the stock to Butcher, but Butcher "assured [Cash]

21 that he had an investor who would infuse AMT with $22M-$25M 'within the month'" and

22 assured Cash that "if he had the shares, he could culminate the deal and we could begin

23 bringing the mine into production during the 2010 season . . . ."  (Id. at ¶ 17.)  Cash states

24 that he "allowed [his] judgment to be swayed by [his] desperation," and he transferred the

25 shares.  (Id.)

26 ///

8

1    Cash does not dispute that most of the statements the Counterclaim attributes to

2   Butcher are not actionable.  However, Cash contends Butcher's promises that he would

3   secure funding via the 22,750,000 shares was not mere puffery, and is an actionable

4   misrepresentation.  The Cash declaration includes some language suggesting Cash did not

5   justifiably rely on Butcher's alleged misrepresentations regarding his intent to raise funds

6   for AMT, specifically that Cash had become leery of Butcher, suspected Butcher was not

7   what he represented, and was uneasy in dealing with Butcher.  But Cash also averred that

8   Butcher assured him of his ability to obtain imminent funds from an investor.  Whether

9   Cash justifiably relied on Butcher's reassurances, despite his qualms, is a fact question not

10   suitable for determination at the dismissal stage.  As stated above, the Court will not

11   consider the July 14 letter, and the Court therefore will not dismiss based on the argument

12   that the Counterclaim and the letter are inconsistent.  The Court therefore will deny

13   Butcher's motion to dismiss the fraud and negligent misrepresentation counterclaims.

14    **C. Constructive Fraud**

15    Butcher argues the constructive fraud counterclaim must be dismissed because

16   the allegations do not support a special relationship existed between Butcher and Cash.

17   Butcher notes that to the contrary, Cash averred in his declaration that he did not trust

18   Butcher.  Cash responds that he placed special confidence in Butcher when he transferred

19   the shares to Butcher to be used for Cash's and AMT's benefit.

20    Under Nevada law, constructive fraud is "the breach of some legal or equitable

21   duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency

22   to deceive others or to violate confidence."  Long v. Towne, 639 P.2d 528, 529-30 (Nev.

23   1982).  "Constructive fraud is characterized by a breach of duty arising out of a fiduciary or

24   confidential relationship."  Id.  Such a relationship exists "when one reposes a special

25   confidence in another so that the latter, in equity and good conscience, is bound to act in

26   good faith and with due regard to the interests of the one reposing the confidence."  Id.

1    Ordinarily, an arms-length contractual relationship will not support a finding of a fiduciary

2    or confidential relationship.  Executive Mgmt., Ltd. v. Ticor Title Ins. Co., 963 P.2d 465,

3    477 (Nev. 1998).  Further, where the plaintiff testifies that he or she did not trust the

4    defendant, no special confidence is reposed.  Long, 639 P.2d at 529-30.

5            The Counterclaim alleges no facts supporting a fiduciary or confidential

6    relationship.  The Counterclaim alleges an oral agreement between two individuals to

7    exchange shares of a corporation for funds to bring AMT into SEC compliance and to

8    obtain investors for AMT.  The Court therefore will grant Butcher's motion to dismiss this

9    claim, with leave to amend to allege facts supporting a fiduciary or confidential

10   relationship.

11           **D.  Breach of Contract and Covenant of Good Faith and Fair Dealing**

12           Butcher argues the allegations supporting Cash's breach of contract and breach of

13   the covenant of good faith and fair dealing claim are contrary to the terms of the parties'

14   written agreement as reflected in the July 14 letter, and the parol evidence rule would bar

15   evidence relating to oral promises between the parties.  Because the Court will not consider

16   the July 14 letter, the Court will deny the motion to dismiss this claim.

17           **E.  Securities Fraud**

18           Butcher moves to dismiss this claim because Cash's allegations of justifiable

19   reliance contradict his declaration in the Nevada state court case.  Butcher also argues that

20   Cash admitted in that same declaration that Butcher satisfied his obligations by raising $13

21   million for XS.  Cash responds that he has alleged justifiable reliance.  Cash also argues

22   that Butcher raised $13 million for XS, but failed to raise any funds for AMT as promised.

23           "Section 10(b) of the Exchange Act of 1934, 15 U.S.C. § 78j(b), makes it

24   unlawful for any person . . . [t]o use or employ, in connection with the purchase or sale of

25   any security . . . any manipulative or deceptive device or contrivance in contravention of

26   such rules and regulations as the Commission may prescribe[.]"  In re Daou Sys., Inc., 411

1   F.3d 1006, 1014 (9th Cir. 2005) (quotation omitted).  Pursuant to section 10(b), the SEC

2   promulgated Rule 10b-5, which makes it unlawful:

3       (a) To employ any device, scheme, or artifice to defraud,
        (b) To make any untrue statement of a material fact or to omit to state a
4       material fact necessary in order to make the statements made, in light
        of the circumstances under which they were made, not misleading, or
5       (c) To engage in any act, practice, or course of business which operates
        or would operate as a fraud or deceit upon any person, in connection
6       with the purchase or sale of any security.

7   17 C.F.R. § 240.10b-5.

8       The Court will deny Butcher's motion based on a lack of justifiable reliance for

9   the reasons stated above with respect to the fraud and negligent misrepresentation claims.

10  The Court also will deny Butcher's motion based on Cash's statements in his declaration.

11  Although Cash stated Butcher obtained $13 million for XS, the gravamen of Cash's

12  securities claim is that Butcher falsely represented he would use 22,750,000 AMT shares to

13  obtain funding for AMT, and that Butcher did not do so and never intended to do so.

14      **F.  AMT's Counterclaim**

15      Butcher moves to dismiss AMT's Counterclaims (Doc. #12) for lack of standing,

16  as well as on the merits.  AMT did not respond to this motion.  Pursuant to Local Rule

17  7-2(d), AMT's failure to respond to the motion constitutes consent to the motion being

18  granted.  The Court therefore will grant the motion to dismiss AMT's counterclaims.

19  **III.  CONCLUSION**

20      IT IS THEREFORE ORDERED that Plaintiff's Motion to Dismiss Counterclaim

21  Filed by Defendant H. Philip Cash (Doc. #13) is hereby GRANTED in part and DENIED in

22  part.  The motion is granted as to Defendant/Counterclaimant H. Philip Cash's third

23  counterclaim for constructive fraud.  The motion is denied in all other respects.

24      IT IS FURTHER ORDERED that Defendant/Counterclaimant H. Philip Cash

25  may file an amended complaint within thirty (30) days of the date of this Order.

26  ///

1    IT IS FURTHER ORDERED that Plaintiff's Motion to Dismiss Counterclaim

2  Filed by Defendant Advanced Mineral Technologies, Inc. (Doc. #18) is hereby GRANTED.

3  Defendant/Counterclaimaint Advanced Mineral Technologies, Inc.'s Counterclaims (Doc.

4  #12) are hereby dismissed.

5

6  DATED: March 2, 2011

7

8  _____

       PHILIP M. PRO

9       United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26